CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, AP-
PELLEE AND CROSS-APPELLANT, v. BOX BUTTE COUNTY,
APPELLANT AND CROSS-APPELLEE.

FILED DECEMBER 23, 1915. No. 18427.

1. **Appeal**: BRIEFS: STATEMENT OF EVIDENCE. Upon appeal the state-
ment in the briefs of the substance of the evidence bearing upon
a question of fact necessary to the determination of the case "will
be taken to be accurate and sufficient for a full understanding of
the questions presented for decision, unless the opposite party in
his brief shall deny the correctness or accuracy of the statement,
specifying with particularity the defects and inaccuracies therein,
with citation of the page and paragraph of the transcript or page
and question of the bill of exceptions, as the case may be, relied
upon by him in support of his contentions in that regard." Su-
preme Court Rule 12 (94 Neb. XI).

2. **Taxation**: RAILROAD PROPERTY: ASSESSMENT. The expression
"right of way and depot grounds" in section 6375, Rev. St. 1913,
was not intended to exclude from the jurisdiction of the state
board in assessing railroads all property situated more than 100
feet from the center of the main track of the road.

3. ———: ———: ———. A railroad, for the purpose of assess-
ment and taxation, is considered as an entity, and includes all
property that is held and used principally in the operation of
the road and carrying on the business of transportation.

4. ———: ———: ———. The state board of equalization in assess-
ing a railroad acts in a quasi-judicial capacity. In doubtful cases
its determination as to whether a particular article of property
is a part of the railroad entity is to be considered by local assessors.

5. ———: ———: ———. The construction in *Adams County v.
Kansas City & O. R. Co.*, 71 Neb. 549, of that part of the revenue

law (Rev. St. 1913, sec. 6375) which specifies property to be assessed locally is adhered to.

6. ——: ——: ——. A large quantity of steel rails not shown to be intended for repair of the road in this state and not assessed by the state board may be assessed locally.

7. ——: ——: ——. Eleven miles of fence on leased land not assessed by the state board may also be locally assessed.

APPEAL from the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE, *Affirmed.*

*Lee Basye* and *Burkett, Wilson & Brown,* for appellant.

*Byron Clark, Jesse L. Root* and *F. A. Wright, contra.*

SEDGWICK, J.

The Chicago, Burlington & Quincy Railroad Company is a corporation operating a railroad throughout this and adjoining states, a line of its road extending through Box Butte county and the city of Alliance, a division city on this line. It made a return of its property to the state board of equalization of assessment, which was duly assessed by that board. The local authorities in Box Butte county assessed certain items of property which had been so assessed by the state board, and from the action of the local board of equalization thereon the railroad company appealed to the district court for that county. Upon trial in that court the action of the board of equalization was affirmed in part and reversed in. part, and the railroad company and the county have both appealed to this court.

The attorneys for the county say in their brief: "The disposition of this case seems to turn upon the definition of 'right of way' used in the statute." They also quote the following stipulation from the record. "It is stipulated between the parties hereto that all of the property included in the assessment to which the plaintiff is objecting is situated more than 100 feet from the main track of the plaintiff company's railroad, and that it is south of the main track." They also quote another stipulation which

99 Neb. 14

relates only to an article which the district court found should be assessed locally, and then say: "These two stipulations set at rest the question of the location of this property, and settle beyond doubt that the property included in the assessment of the local authorities was located beyond the right of way, that is, more than 100 feet from the center line of the main track, and it appears from the testimony of the engineer that the right of way of this appellee is 200 feet wide, 100 feet on each side of the center of the track, or less." The attorneys for the railroad company quote from the record testimony of the general superintendent of the company and another witness that the land on which the property in controversy was located at the time of the assessment was then, and had been for many years, used by the company for station and depot grounds; that it was purchased for that purpose and had always been so used. The brief of the county does not deny that all of the property that was by the district court found to be a part of the railroad entity and should be properly assessed by the state board was and is located on the depot grounds, and that the buildings, yards and barns involved are all served by side and spur tracks; so that the contention of the county seems to be that under no circumstances can the right of way extend more than 100 feet from the center of the main track, and that property not on this right of way must be locally assessed.

In 1869 the legislature provided for the assessment of railroad property by the state board of equalization. Laws 1869, p. 179, sec. 17. By this act, as amended (Gen. St. 1873, ch. 66, sec. 17), the state board was required to assess "roadbed, superstructure, right of way, rolling stock, side track, telegraph lines, furniture and fixtures, and personal property belonging to such corporation." This statute was several times construed by this court, and also amended from time to time. As amended in 1881 (Laws 1881, ch. 70, sec. 1) the statute required the report to the state board of assessment to state: "The number of miles of such railroad and telegraph line in each organized county

in the state, and the total number of miles in the state including the roadbed, right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock and personal property necessary for the construction, repairs or successful operation of such railroad and telegraph lines: Provided, however, that all machine and repair shops, general office buildings, storehouses, and also all real and personal property outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies, shall be listed for purposes of taxation" by the county assessors.  The general purpose of this legislation is stated in *State v. Savage,* 65 Neb. 714, 750, as follows: "It seems reasonably clear that in assessing railroad and telegraph property, as contemplated by sections 39 and 40, the whole property belonging to any one corporation, and subject to assessment in this state, should be valued for tax purposes in its entirety, and that in such valuation should be included all elements going to make up the entire property, whether consisting of franchises or other intangible property, or physical property, be it real, personal or mixed." It is explained somewhat more at large in *Chicago, B. & Q. R. Co. v. Richardson County,* 72 Neb. 482: "If the railroad is an entity, we have one piece of property, spreading over several counties; if that portion within each county is a separate entity, then a valuation of such separate entity should be made in each county, as in other cases.   *   *   *   If the road as a whole is valued correctly, the several portions in each county cannot fail to be justly valued when assessed at the proportion they bear to the whole." Apparently each successive amendment of the statute makes this purpose of the legislature more plain.  The final amendments by which this action is to be determined were made in 1903 and 1909.  Laws 1903, ch. 73, p. 413; Laws 1909, ch. 111, p. 441; Rev. St. 1913, secs. 6374-6386.

Section 6374 provides: "The property of railroads, railroad corporations and car companies shall be annually as-

sessed as prescribed in this article by the state board of equalization and assessment."

Section 6375 provides: "The state board of equalization and assessment is hereby empowered, and it is made its duty, to assess all property of the railroads and railroad corporations in the state of Nebraska: *Provided, however,* all machine repair shops, general office buildings, storehouses, and also all real and personal property outside of right of way and depot grounds as of and belonging to any such railroad and telegraph companies, shall be listed for purposes of taxation by the principal officers or agents of such companies with the assessors of any precinct of the county where such real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property."

Section 6376 provides: The state board shall "ascertain all property of any railroad company owning, operating or controlling any railroad or railroad service in this state, which, for the purpose of assessment and taxation, shall be held to include the main track, side track, spur tracks, warehouse tracks, road bed, right of way and depot grounds, and all water and fuel stations, buildings and superstructures thereon, and all machinery, rolling stock, telegraph lines and instruments connected therewith, all material on hand and supplies provided for operating and carrying on the business of such road, in whole or in part, together with the moneys, credits, franchises and all other property of such railroad company used or held for the purpose of operating its road."

Section 6377 requires the company to "return to the state board of equalization and assessment a sworn statement or schedule of the property of such company." This statement or schedule it provides shall include: "Third— a complete list giving size, location as to county, township and city and village, material and value of all depots, station houses, machine shops, stock yards, scales or other buildings situated wholly or in part on the right of way,

together with all platforms, fuel and water stations, and the machinery and tanks connected therewith."

It will be noticed that section 6375 is the only section specifying property to be assessed by the local authorities, and the language of this section in that regard, as amended in 1909 (Laws 1909, ch. 111, p. 441), is the same as in the corresponding section of the act of 1881, except that as published it omits the word "and" in the phrase "all machine and repair shops." This omission of the word "and" is of little importance, since the history of this legislation shows that such omission was an oversight. The word is in the enrolled and authenticated bill of the act of 1903, filed in the office of the secretary of state, but was, by mistake, omitted from the act as published. This omission evidently led to the same omission in the amendment of 1909. Section 6376 specifies the property of the railroad company which shall be included for the purpose of assessment by the state board, and it includes "the main track, side track, spur tracks, warehouse tracks, road bed, right of way and depot grounds." The railroad for the purpose of assessment and taxation is considered as a whole. The reason for treating it as an entity is stated in the opinion of Mr. Commissioner Pound in *Chicago, B. & Q. R. Co. v. Richardson County, supra.* Its business being the transporting of persons and property, the entity so to be assessed includes all property that is held and used principally in carrying on such business. The difficulty in the case is in determining what property is held and used for such purpose. In *State v. State Board of Equalization,* 81 Neb. 139, it is said that the state board "acts in a quasi-judicial capacity." In *Chicago, B. & Q. R. Co. v. Merrick County,* 36 Neb. 176, the trial court found specially that the property involved was not returned by the railroad company to the state board for assessment, and that it was not assessed by the state board. The court said in the opinion that the principal complaint of the plaintiff was that the evidence did not support that finding, and "that the presumption is that the state board

assessed the property in question, hence it is liable to double taxation thereon. * * *. Did the plaintiff return the property in question to the state board? If it did, the return will show. If it did not, it has no cause of complaint. The revenue law of this state is designed to make a fair and just apportionment of taxes upon all the taxable property of the state whether the owner be a wealthy corporation or a person of but little means. There is no complaint that the property is assessed too high or that the tax itself is unjust if the property has not already been assessed by the state board. The proof fails to show that it was so assessed."

It is not the policy of the law to create dissensions or difference of views of jurisdiction or to cause double or conflicting assessments. Some articles of property are plainly assessable by the state board; others are as plainly subject to local assessment. There are articles of property in regard to which it is not so easy to determine whether they should be assessed locally or are within the jurisdiction of the state board as part of the railroad entity. If these doubtful cases are determined by local assessors, there will be a variety of conclusions and no uniformity and no equality between different localities. The state board, with the assistance of its experts, is better qualified to determine what articles of property are essentially a part of the railroad, and there is no doubt that some consideration should be given to its action in the matter. If it declines to assess an article of property as not being a part of the railroad, the local assessor may well assume that it falls within his jurisdiction. If it assesses property as a part of the railroad entity, local assessors may well assume, in doubtful cases, that such property has been properly assessed.

It seldom happens that a common expression has received such diverse construction and application, depending upon the particular circumstances of its use, as has the expression "right of way." Even when the right of way of a railroad company is defined, we find a great variety of

construction, depending upon the connection in which it is used. The supreme court of the United States in *St. Louis, K. C. & C. R. Co. v. Wabash R. Co.*, 217 U. S. 247, adopted the definition of the term "right of way" of the circuit court of appeals in the same case, as follows: "The ordinary signification of the term 'right of way,' when used to describe land which a railroad corporation owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for this purpose, and not any specific or limited part thereof upon which its main track or other specified improvements are located. *Joy v. St. Louis*, 138 U. S. 1; *New Mexico v. United States Trust Co.*, 172 U. S. 171,174 U. S. 545; *Chicago & A. R. Co. v. People*, 98 Ill. 350; *Lake Erie & W. R. Co. v. Middlecoff*, 150 Ill. 27; *Pfaff v. Terre Haute & I. R. Co.*, 108 Ind. 144."

In view of the general purpose of our statute that the state board shall assess the railroad as an entity, including all of its property used in operating its road or carrying on the business of such road, and considering the language used in other sections of the statute, it seems clear that the words "right of way and depot grounds," as they are used in section 6375, could not have been intended to exclude from the jurisdiction of the state board all property situated more than 100 feet from the center of the main track of the road. The brief of appellant rests entirely upon this proposition. It offers us no assistance upon any other theory of the case. As this theory fails, and we have not observed any plain error which requires a reversal upon any other theory, we must hold that the appeal of the county is without merit.

The railroad company suggests a question as to the construction of that part of section 6375 which specifies property to be assessed locally: "All machine and repair shops, general office buildings, storehouses, and also all real and personal property, outside of right of way and depot grounds." This provision was construed in *Adams County v. Kansas City & O. R. Co.*, 71 Neb. 549, in which it was said: "The plaintiff contends that each of the

terms used in the proviso, to designate the different classes of property, is qualified by the phrase, 'outside of said right of way.' * * * Had the legislature thus intended, it is not likely they would have followed a specific enumeration by general terms sufficiently comprehensive to include all the preceding terms. * * * Besides, from the word 'also,' following the conjunctive, and the repetition of the collective 'all,' it is clear, we think, that the phrase, 'outside of said right of way,' was intended to qualify only the word 'property' immediately preceding it." We do not feel justified in departing from this construction of the statute.

The district court decided that 12,938 steel rails, valued at $97,020, and 11 miles of fence on leased land should be assessed locally. These rails and fence, it is contended, should have been assessed by the state board. In *Chicago, B. & Q. R. Co. v. Merrick County, supra,* it was decided that "material for the construction of a railroad which was piled up near Central City and had so remained for a long time * * * was taxable" by the local assessor. It is not clear that these rails were on hand for the repair of the road in this state, and we cannot say that the assessing authorities and the district court have erred in this regard. The fence, being on leased lands, and not having been assessed by the state board, was properly assessed locally.

We have not found any error in the judgment of the district court requiring reversal, and it is therefore

AFFIRMED.

FAWCETT, J., not sitting.