STATE OF NEBRASKA ET AL., APPELLANTS, V. ODD FELLOWS HALL ASSOCIATION ET AL., APPELLEES.

FILED JULY 1, 1932.   NO. 28133.

*C. A. Sorensen,* Attorney General, and *Hugh LaMaster,* for appellants.

*Raymond G. Young, Kelso A. Morgan, Rosewater, Mecham, Burton, Hasselquist & Chew, Joseph A. Vojir, Howell, Tunison & Joyner, A. W. Jefferis, Votava & McGroarty, Daniel J. Gross, J. H. Adams, J. J. Krajicek, H. M. Baldrige, William Raab, T. B. Dysart, O'Sullivan & Southard, Gerald M. Vasak, James T. English, G. F. Nye, Brown, Fitch & West, Smith, Schall & Sheehan, W. C. Ramsey, James M. Patton,* and *Montgomery, Hall & Young, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

EBERLY, J.

In this cause are presented appeals by the state of Nebraska and the state board of equalization and assessment, as appellants, from a judgment entered by the district court for Douglas county dismissing appeals by these appellants from the order of the board of equalization of Douglas county entered on the 19th day of August, 1930, purporting to exempt from taxation for that year certain real estate owned in severalty by the appellees herein, situated in that county, as property "owned and used exclusively for educational, religious, charitable or cem-

etery purposes, when such property is not owned or used for financial gain or profit to either the owner or user." Const. art. VIII, sec. 2. The appellees are twenty-seven in number. The rights of each are involved in a separate and distinct appeal to this court, and relate to separate and distinct real estate. However, for mutual convenience, these cases have been, in effect, consolidated, argued, and presented here as one case.

The record discloses that the notice of appeal was served by the appellants on the 8th day of September, 1930; an appeal bond was at that time filed and approved, and a complete transcript of the proceedings of the board of equalization in all cases appealed from was, on the same day, filed in the district court for Douglas county. On the 19th day of June, 1931, after hearing thereon, the appeals from the board of equalization of Douglas county, so taken by appellants, were dismissed by the district court for Douglas county, "for the reason that the court has no jurisdiction herein and the said appellants no authority to take said appeals." So, in each of these cases but two questions were presented and decided by the trial court, viz.: First, Did it possess jurisdiction of the appeals? Second, Were the state of Nebraska and the board of equalization and assessment, or either of them, competent as parties litigant to present the questions involved? Both were decided against the appellants.

The following sections of the statutes are pertinent in view of the questions before us:

"The county board, the county assessor and county clerk shall constitute the county board of equalization, and the county clerk shall be the clerk of said board." Comp. St. 1929, sec. 77-1701.

"The county board shall hold a session of not less than three and not more than twenty days, for the purpose contemplated in this section, commencing on the first Tuesday after the second Monday of June each year, and" (for the purpose of this hearing the remainder of this section will be taken as conferring ample power and authority

upon the board of equalization of Douglas county of 1930, during the time limited by law, upon proper complaint, to hear, investigate, and determine from competent evidence the tax exempt character of the different tracts and parcels of real estate of the several appellees described in these several complaints). Comp. St. 1929, sec. 77-1702. See State v. Drexel, 75 Neb. 751.

"Appeals may be taken from any action of the county board of equalization to the district court within twenty days after its adjournment, in the same manner as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county." Comp. St. 1929, sec. 77-1705.

It may be said in passing that section 77-1707, Comp. St. 1929, provides: "The county assessor, immediately after the board of equalization shall have completed its labors, shall prepare an abstract of the assessment rolls of his county on blanks to be furnished by the state board, (the values to be given shall be as equalized and corrected by the county board,) and forward it to the state board of equalization and assessment on or before the tenth day of July."

Under these provisions this court has determined that a county board of equalization is limited to a session of twenty days, not necessarily continuous, but that it may adjourn from day to day, or time to time, and jurisdiction to exercise its vested powers may thus continue until July 10th in any year, but no longer. Missouri P. R. Corporation v. Board of Equalization, 114 Neb. 84; Hiller v. Unitt, 113 Neb. 612.

In proper construction of this language providing for an appeal from the determinations of the board of equalization, it may be said that section 26-119, Comp. St. 1929, provides in part: "And when the claim of any person against the county is disallowed, in whole or in part, by the county board, such person may appeal from the decision of the board to the district court of the same county, by causing a written notice to be served on the

county clerk, within twenty days after making such decision and executing a bond to such county, with sufficient security, to be approved by the county clerk, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellants."

Section 26-120, Comp. St. 1929, provides: "Any taxpayer may likewise appeal from the allowance of any claim against the county by serving a like notice within ten days and giving a bond similar to that provided for in the preceding section."

Section 26-121, Comp. St. 1929, provides: "The clerk of the board, upon such appeal being taken, and being paid the proper fees therefor, shall make out a complete transcript of the proceedings of the board relating to the matter of their decision thereon, and shall deliver the same to the clerk of the district court, and such appeal shall be entered, tried, and determined the same as appeals from justice courts," etc.

It is to be noted, however, that section 20-2231, Comp. St. 1929, provides: "No bond for costs, appeal, supersedeas or attachment shall be required of the state of Nebraska, or of any state officer, state board, state commission, head of any state department, agent or employee of the state, the secretary of the department of trade and commerce as receiver of insolvent state banks or any receiver appointed on application of the state of Nebraska; in any proceedings or court action in which said state, officer, board, commission, head of department, agent or employee is a party litigant in its or his official capacity."

The section last quoted is section one of an act entitled, "An act relating to the giving of bonds by the state of Nebraska and state officers, boards, commissions, heads of departments, agents and employees, and receivers appointed on the application of the state of Nebraska, and the liability of the state of Nebraska for court costs and damages; and to declare an emergency." Laws 1930, Special Session, ch. 8. This act included an emergency clause,

and thus, by its terms, obviated the requirement of the execution of appeal bonds by the appellants in the present appeals.

With reference to the service of the notice of appeal, it may be said that the form of this notice is not prescribed by the terms of the statute requiring the same. In the instant case a notice in writing appears to have been actually served, and forms a part of the transcript certified to by the clerk, the officer who by law is required to be served with it. All appellees were named therein, and the notice placed in the possession of the county clerk required the appellees to take notice of the appeal. In this notice the action of the county board of equalization with reference to the property of each of the appellees is fully and correctly set forth, and described; and the notice itself specified that "said appeal will be taken severally as to each of said exemptions and reductions." So, too, the county clerk, pursuant to this notice, has fully performed the requirements of section 26-121, Comp. St. 1929. It appears, therefore, that the notice has served its full purpose and so far as objections thereto are based upon the form, contents, and service of the notice, they are wholly unavailing.

Appellees strenuously insist that neither the state of Nebraska nor the state board of equalization and assessment has a right to appeal from the action of the county board of equalization. The trial court adopted this view. It is obvious that, if either of these appellants possess the right of review, the district court has erred in its judgment, and the present case is for reversal. It is noteworthy, however, that in the many cases which the industrious counsel for the appellees have laid before us for consideration neither the state of Nebraska nor the state board of equalization and assessment have appeared in the role of complainant before the county board of equalization, nor, as an appellant, has prosecuted an appeal from the final order in tax matters made by such county

board. It seems that the precise question here presented has never been determined in this jurisdiction.

The right of appeal from the action of the county board of equalization depends for its existence upon the provisions of section 77-1705, Comp. St. 1929, already quoted. It must be admitted, however, that the general language of this section neither enumerates the persons or classes of persons entitled to appeal, nor does it expressly, or in terms, attempt to limit or preclude the exercise of that right by any person, representative, or entity, whose interest may have been adversely affected by the action appealed from. If such limitations exist, they must be found in cognate provisions applicable to this subject, and must be due to implications which the language of sections other than the one providing for the right of appeal may furnish.

Appellees insist that such restrictions exist by virtue of section 77-1706, Comp. St. 1929. It is true that in this section last referred to provisions are made regulating the practice to be followed in cases wherein a person appeals from the assessment of his own property, and also where the appeal is from the assessment of the property of another. And it is also to be remembered that, in the latter class of cases, a special exception is provided where the appellant is the "county assessor" or "county clerk." It would seem that the language of this exception affords a substantial basis for the inference that the officers named, in taking the action referred to, were acting in behalf of the public or state, which would indeed be the real party in interest in such case. This, considered as an implied recognition of the right of the general public or the state in its governmental capacity to invoke the jurisdiction of the reviewing instrumentality, certainly may not be taken at the same time as an implied limitation denying to all parties, except those expressly named, viz., the county clerk and county assessor, the right to appear in this proceeding in behalf of the real party in interest. The very language of the section in-

volved precludes this conclusion. This statutory language relates to the appeal of "any person." Section 77-111, Comp. St. 1929, in its legislative definitions of the terms of our revenue act, expressly prescribes: "The word 'person' includes any number of persons; and any copartnership, association, joint stock company, corporation, or any other entity that may be the owner of property." This is but a legislative recognition of the general rule that "a state * * * may be regarded as a person in law, and as such may be recognized by the courts as a party plaintiff." 47 C. J. 19.

"It (a state) is an artificial person. It has its affairs and its interests; it has its rules; it has its rights; and it has its obligations. It may acquire property, distinct from that of its members." *Chisholm v. Georgia,* 2 Dall. (U. S.) 419, 455. So, in the sense of the defined terms of our revenue act, "state" is not only embraced in the term "person" as implied therein, but is likewise within the terms of the descriptive language, "any other entity (a real being, whether in thought [as an ideal conception] or in fact. Webster's New International Dictionary.) that may be the owner of property."

Then, again, the construction here suggested is in accord with the interpretation of similar language of other revenue enactments. In *Kearney County v. Hapeman,* 102 Neb. 550, a part of our inheritance tax law relating to appraisement of property as one of the steps in assessing that tax was before this court. The appeal of the county of Kearney in this action from the appraisal as made by the county judge had been dismissed by the district court, on the theory that the controlling words of this statute, "Any person or persons dissatisfied with the appraisement or assessment may appeal," did not contemplate an appeal by the county, for the reason that it had no appealable interest. Addressed to this question the following language was employed by this court: "The question is important from whatever angle it may be viewed. The county as a unit of government is a representative of the

sovereign power, the state, in matters affecting revenue, and as such it has a vital interest in questions relating to revenue. A person whose inheritance is affected by the tax in question is also interested, and neither the state nor the individual should be denied the right of having an adverse decision reviewed. The law favors the right of appeal, and that, too, on equal terms and without discrimination as to either party. It is elementary that a statute providing otherwise would be unconstitutional. It is held generally that, if a statute grants the right of appeal to one party, such statute will not be construed to be exclusive as to the other party. 2 R. C. L. 28; 2 Sutherland (Lewis') Statutory Construction (2d ed.) secs. 516, 717. While not bearing on the present case, but merely to show the solicitude of the people that the right of review shall be held inviolate, it will be borne in mind that the Bill of Rights provides: 'The right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied.' Const. art. I, sec. 24." The conclusion of this court in that case was: "That which is implied is as much a part of the statute as that which is expressed;" that the county as representative of the sovereign power, the state, was a "person" within the meaning of the language quoted; that the district court had jurisdiction to entertain the appeal as made, and the judgment of the trial court was reversed.

We do not find that the judicial construction which these controlling provisions have received by this tribunal in any way operates to restrict their purview. Indeed, in general it must be admitted that the tendency in the decisions of this state is to construe the provisions under consideration as essentially remedial in their inherent nature, and entitled to be construed as such. Thus, we are committed to the view that it is not even a prerequisite to the right of appeal that the appellants should file objections with, or appear before, the board of equalization. *In re Assessment of Bankers Life Ins. Co.*, 88 Neb. 43.

It follows that the state, being an "entity" that may be adversely affected by the action of the county board of equalization in determining the assessability of property, and being a "person" within the meaning of the revenue act, is entitled to an appeal from an adverse decision of such county board. The question remaining is, whether the appeals as here presented in the name of the state of Nebraska and in the name of the board of equalization and assessment of Nebraska are in law and fact legally authorized.

In 1920 section 28, art. IV, was adopted as an amendment to our Constitution. It provides: "A tax commissioner shall be appointed by the governor with the advice and consent of the senate. He shall have jurisdiction over the administration of the revenue laws of the state, and together with the governor, secretary of state, state auditor and state treasurer shall have power to review and equalize assessments of property for taxation within the state. He shall have such other powers and perform such other duties as the legislature may provide." The words "shall have jurisdiction" are not new in Nebraska jurisprudence. Prior to the adoption of the amendment of 1920 quoted, they had received a definite and settled construction in other connections. Indeed, this court has long been committed to the view that the terms of the constitutional provision that "the district courts shall have both chancery and common law jurisdiction" are not only definite, but are self-executing. Const. art. V, sec. 9. And that under them district courts have constitutional equity jurisdiction which may be exercised without legislative enactment. *Matteson v. Creighton University*, 105 Neb. 219; *State v. Maltby*, 108 Neb. 578, 588; *Abbott v. Johnston*, 93 Neb. 726; *Gainsforth v. Peterson*, 114 Neb. 442; *Robinette v. Olsen*, 114 Neb. 728; *Norfolk Packing Co. v. American Ins. Co.*, 116 Neb. 118; *Burnham v. Bennison*, 121 Neb. 291. And is beyond the power of the legislature to limit or control. *Lacey v. Zeigler*, 98 Neb. 380. It is obvious that the words, "He shall have juris-

diction over the administration of the revenue laws of the state," are just as definite, complete, and certain, with respect to the subject-matter to which they relate, as the words, "The district courts shall have both chancery and common law jurisdiction." Both are addressed to courts, not legislatures. *Willis v. Mabon,* 48 Minn. 140; *State v. Kyle,* 166 Mo. 287. Nothing appears in either provision that indicates that the matter is referred to the legislature for further action. *Harris v. Walker,* 199 Ala. 51. "Constitutional provisions are 'self-executing' where it is the manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoyment of a right given, or to the enforcement of a duty or liability imposed." *State v. Harris,* 74 Or. 573. See *Lyons v. Longmont,* 54 Colo. 112; *State v. Duncan,* 265 Mo. 26. Indeed, it may be said in passing that this construction has received the approval of the legislative department of the state, for we find in section 1, art. III, ch. 133, Laws 1921, this language: "The tax commissioner shall be appointed by the governor with the advice and consent of the senate, and shall receive * * * and have jurisdiction over the administration of this act and all the revenue laws of the state."

So, too, in light of the principle, "The proceedings and debates of the constitutional convention, while powerless to vary the terms of the Constitution, are nevertheless valuable aids in determining the purpose and consequent meaning of a doubtful provision" (6 Ency. of Law [2d ed.] 930), it may be said that in the records of the constitutional convention of 1920 it appears that the report of the chairman of the committee by which this proposition (relating to a tax commissioner) was introduced contains the following: "That this matter relates to taxation wholly, and it is a part of our taxation system and the committee is unanimously of the opinion that a centralized control over the matter of the assessment of taxes is necessary in order to carry out any constitutional provision." Proceedings Neb. Const. Conv. 1919-1920, vol.

1, p. 834. It is quite obvious that the object and purpose in contemplation at the time of the adoption of section 28, art. IV of the Constitution, are clearly apparent from the words employed therein, as well as from the purpose expressed in the proceedings of the constitutional convention, and plainly evidence an intention to strengthen and correct the admitted weakness of the taxing system of Nebraska as it existed prior thereto. True, the amendment in terms continued the existence of the state board of equalization and assessment which previously existed by statutory authority. But this instrumentality of the state lacked the power of central control in the assessment of taxes and in the determination of the question of the assessability of property. By the revenue act, which in effect still remains upon the statute books of this state, the question of liability to taxation of property was a matter vested in the county board of equalization, with appeal from their decision to the district court. The state board of equalization and assessment had no jurisdiction of this question on appeal. *State v. Drexel,* 75 Neb. 751. In the light of the circumstances surrounding the adoption of the amendments of 1920, the words, "He shall have jurisdiction over the administration of the revenue laws of this state," have no uncertain meaning. It is to be remembered that "a section of the Constitution * * * must be construed so as to give effect, if possible, to it as an entirety, and render every word, phrase, and clause operative." *Finerty v. First Nat. Bank,* 92 Okla. 102. So, too, every provision in a Constitution should be construed, if possible, so as to give effect to every other provision of the instrument. *People v. Case,* 220 Mich. 379. And should also "be interpreted so as to carry out the general principles of the government and not defeat them." *Jenkins v. State Board of Elections,* 180 N. Car. 169. Further, the conclusion is indisputable that "that which is implied in a Constitution is as much a part of it and is as effective as that which is expressed." *State v. Greer,* 88 Fla. 249. Jurisdiction over the administration of all the rev-

enue laws of the state necessarily embraces jurisdiction of the proceedings authorized by sections 77-1702 to 77-1705, Comp. St. 1929.

The exercise by the tax commissioner of his constitutional powers, express and implied, included in this constitutional grant to him of jurisdiction, does not necessarily involve depriving the taxation agents of any authority and powers they had previously exercised under the terms of the revenue act. It merely provided an additional administrative agency, expressly and impliedly charged with the duty of securing a just and uniform enforcement of the terms of this law, and also of the proper exercise of the powers of the revenue officers. The necessity involved in the situation, as well as the existence of these newly-created powers, fully justifies and authorizes the tax commissioner, for and on behalf of the state of Nebraska, in intervening in tax proceedings, prosecuting appeals from county boards of equalization, and carrying on such other proceedings as may be expedient or necessary to secure a proper and uniform determination of questions of taxation, such as are involved in these several appeals. To determine otherwise is to negative the action of the state in the adoption of the controlling amendment, and to determine that the language incorporated therein is wholly ineffectual to accomplish the purpose it clearly expresses. This we cannot do. The defect sought to be remedied by this constitutional amendment is plain. The powers conferred by the terms of the constitutional grant are ample, and the general purposes of government will be subserved by their due enforcement.

So far as the use of "The State of Nebraska" as a party appellant, it may be said, in conformity with the general principles of our Civil Code, that "every action must be prosecuted in the name of the real party in interest" (Comp. St. 1929, sec. 20-301), and "officers may sue * * * in such name as is authorized by law" (Comp. St. 1929, sec. 20-304). The tax commissioner, in the ex-

ercise of, constitutional powers, appearing for and on behalf of the state as the real party in interest in tax matters, by fair implication, in the absence of an express statute directing otherwise, is authorized to carry on proceedings in the name of the state.

It follows that the district court erred in determining it had no jurisdiction, and also in determining that the state of Nebraska had no authority to prosecute the appeals taken.

The judgments of the district court of dismissal in each of the appeals taken by the appellants herein are reversed, and said causes are remanded to the district court, with directions to determine the validity of each of the orders of the board of equalization heretofore appealed from, and for further proceedings in conformity with this opinion.

REVERSED.